**SYNVASIVE CORPORATION,**
Plaintiff,

v.

**STRYKER CORPORATION,**
Defendant.

Stryker Corporation, Counterclaimant,

v.

Synvasive Corporation,
Counterdefendant.

Nos. CIV. S–05–1515 WBS DAD,
S–06–0049 WBS DAD.

United States District Court,
E.D. California.

Feb. 16, 2007.

Matthew Robert Hulse, Theodore T. Herhold, Robert Davis Tadlock, Townsend and Townsend and Crew, Palo Alto, CA, for Plaintiff/Counterdefendant.

Gregory J. Vogler-Pro Hac Vice, Robert A. Surrette-Pro Hac Vice, Timothy J. Malloy-Pro Hac Vice, William B. Gont-Pro Hac Vice, McAndrews Held and Malloy, William Ross Overend, Reed Smith LLP, Chicago, IL, for Defendant.

### MEMORANDUM AND ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

SHUBB, District Judge.

Currently before the court are defendant Stryker Corporation's motions for summary judgment of noninfringement and of invalidity of three patents held by plaintiff Synvasive Corporation, and plaintiff's motion for partial summary judgment of infringement of two specific claims of two of its patents.

### I. Factual and Procedural Background

Plaintiff Synvasive is the assignee of U.S. Patents 6,022,353 ("the '353 patent"), 6,503,253 ("the 253 patent"), and 6,723,101 ("the '101 patent"), all of which relate to surgical saw blades and related methods of using surgical saw blades, and are based on a patent application filed with the Pat-

ent and Trademark Office ("PTO") on May 30, 1991. (Pl.'s Opp'n to Mot. for Summ. J. of Invalidity 5.) The '101 and '253 patents are continuations of the '353 patent; thus, although the claims in the three patents differ, they share a common specification. (*Id.*) The '353 patent issued on February 8, 2000; the '253 patent issued on January 7, 2003; and the '101 patent issued on April 20, 2004. (05–1515 Compl. ¶¶ 5,7; 06–0049 Compl. ¶ 5.) A figure from the '353 patent is included below; it depicts one embodiment of the patented blade.[1]

There are two categories of products manufactured by defendant that allegedly infringe the '253, '353, and '101 patents: (1) Stryker's Dual–Cut blades, with "fishtail-shaped" teeth that are offset;[2] and (2) Stryker's Offset teeth blades.[3]

On March 30, 2006, the court granted defendant's motion for summary judgment for all asserted claims of the '353 patent and Claims 2, 4, 6, 8, 10, and 12 of the '253 patent with respect to the Stryker Dual–Cut blades. (March 30, 2006 Order.) The court denied defendant's motion with respect to the Stryker Offset blades and Stryker Parts Nos. 2108–102S12 and 2108–151S4. (*Id.*) The court construed the claim terms of the '353 and '253 patents pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed.Cir.1995) (en banc).

On May 4, 2006, the court granted plaintiff's motion to consolidate Case No. 06–0049 with Case No. 05–1515. (May 4, 2006 Order.) The court ordered that its March 30, 2006, Order, granting summary judgment in part, would apply to the consolidated suit, including its previous claim construction. (*Id.* 3–4.)

In its current motion, plaintiff argues that defendant's Dual–Cut blades infringe Claims 1 and 14 of the '253 patent and Claims 1–4 and 10 of the '101 patent. (March 30, 2006 Order 23; Pl.'s Opp'n to Mot. for Summ. J. of Noninfringement 3.)

---

1. This figure is also included in the '253 and '101 patents.

2. One model of the Dual–Cut blades, Stryker Part No. 4225–147–090, does not have offset teeth.

3. The court will include within this category Stryker Part Nos. 2108–151S4 and 2108–102S12. There is not a dispute that these blades were manufactured in a flat-top configuration until at least April, 2005 and May, 2005 respectively. (Hulse Decl. Ex. C (Def.'s *Responses and Am. Responses to Interrogs.* Nos. 35, 37).) Plaintiff alleges infringement only of the flat-top configurations of these blades. (Pl.'s Mot. for Summ. J. 5, n. 2.)

Plaintiff alleges that defendant's Offset blades infringe Claims 1, 3, 5, 7, 9, and 11 of the '353 patent; Claims 1, 2, 4, 6, 8, 10, 12, and 14–18 of the '253 patent; and Claims 1–5, 7, 8, 10, 13, 15, and 17 of the '101 patent.[4] (March 30, 2006 Order 23–24; Pl.'s Opp'n to Mot. for Summ. J. of Noninfringement 3.) However, plaintiff fails to defend against Claims 5, 7, 8, 11, 13, 15, and 17. Therefore, the court will enter summary judgment in favor of defendant with respect to those claims.[5]

The court's March 30, 2006, Order, provided a detailed description of the asserted claims with respect to the '353 and '253 patents. (March 30, 2006 Order 3–5.) The '101 patent is a method patent. Claim 1 of the '101 patent is a method for surgical cutting of bone containing the following elements: (1) contacting the bone with an oscillatory cutter having a blade with teeth such that, only initially, a multiplicity of different teeth contact the bone substantially simultaneously, thereby forming a somewhat linear kerf; and (2) forming the kerf substantially V-shaped by having each tooth alternatively and sequentially contacting the kerf. (Gont Noninfringement Decl. Ex. E ('101 patent, 7:2–11).) Claim 2 modifies Claim 1 by requiring "each tooth which next touches the kerf remove bone progressively." (*Id.* ('101 patent, 7:12–14).) Claim 3 modifies Claim 2 by requiring "half of the teeth be away from bone contact for clearing bone chips while another half is working." (*Id.* ('101 patent, 7:15–17).) Claim 4 modifies Claim 3 by requiring "half of the cutting teeth to cool while out of contact from the bone." (*Id.* ('101 patent, 7:18–19).)

Claim 10 of the '101 patent is a method for surgical cutting of bone requiring the following elements: (1) "contacting the bone with a surgical saw blade" having (a) "a proximal end configured to couple the blade to a surgical bone saw," and a distal end having (i) "substantially identical teeth" for cutting bone, (ii) the teeth ending in tips that are "configured to be placed substantially on a tangent that is perpendicular to the radial line extending from the center of the power tool cutting axis that bisects the arc of travel" of the blade, (iii) "such that the teeth contact the bone "to provide better tracking" when forming the kerf, (iv) whereupon the "teeth cut progressively and sequentially as the kerf begins to form," (v) "to provide faster aggressive cutting and efficient chip removal;" and (2) "cutting the bone with the plurality of teeth to form a predetermined cut in the bone." (*Id.* ('101 patent, 7–8:53–5).)

In defendant's first motion for summary judgment, it argues that the Stryker Dual–Cut and Offset blades do not infringe any of the asserted claims of the '353 patent and the '253 patent, and defendant's blades do not infringe any asserted claim of the '101 patent directly, contributorily, or by inducement. In its second motion, defendant argues that asserted claims of the three patents are invalid because they are indefinite, anticipated by and/or obvious by prior art, and prohibited under the statutory on-sale bar. Plaintiff filed a motion for partial summary judgment on December 22, 2006, arguing that the Stryker Offset blades infringe Claim 1 of the '353 patent and Claim 2 of the '253 patent.[6]

---

**4.** Unlike the claims alleged in a complaint, "[t]he claims of the patent provide the concise formal definition of the invention. They are the numbered paragraphs which 'particularly [point] out and distinctly [claim] the subject matter which the applicant regards as his invention.'" *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.,* 868 F.2d 1251, 1258 (Fed.Cir.1989) (citing 35 U.S.C. § 112).

**5.** Further, the court will address defendant's summary judgment motion of invalidity of the '101 patent only with respect to Claims 1–4 and 10.

**6.** Plaintiff specifically enumerates the following products in its summary judgment motion: Stryker Part Nos. 4225–070–090, 4225–85–127, 2108–151S4, 2108–102S12, 2108–

## II. *Discussion*

### A. *Legal Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Alternatively, the movant can demonstrate that the non-moving party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial. *Id.*

Once the moving party meets its initial burden, the non-moving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' [and] designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)). The non-movant "may not rest upon the mere allegations or denials of the adverse party's pleading." Fed.R.Civ.P. 56(e). Any inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The plaintiff movant "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original); *see also Arnett v. Myers,* 281 F.3d 552, 561 (6th Cir. 2002) ("a substantially higher hurdle must be surpassed, particularly where . . . the moving party bears the ultimate burden of persuasion . . . at trial").

### B. *Claim Construction*

■ Generally, courts look to three sources for claim construction: the claims, the specification, and the prosecution history. *Markman,* 52 F.3d at 979. The ordinary meaning of terms is sometimes elucidated by common-sense interpretation by judges or use of "general-purpose" dictionaries. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1314 (Fed.Cir.2005) (citing *Brown v. 3M,* 265 F.3d 1349, 1352 (Fed. Cir.2001) (construing claims without "elaborate interpretation")). Patentees, however, may serve as their own lexicographers when they clearly define terms in a manner different from their generally understood meaning. *K–2 Corp. v. Salomon S.A.,* 191 F.3d 1356, 1364 (Fed.Cir.1999).

The court previously construed the meaning of the terms in the patents. Because the '101 patent is a continuation of the '253 and the '353 patent, and their specifications are almost identical, the court will interpret shared terms in a consistent manner. *See Arthur A. Collins, Inc. v. N. Telecom Ltd.,* 216 F.3d 1042, 1044 (Fed.Cir.2000) (affirming noninfringe-

---

182–001, and 4113–119–090S1. (Pl.'s Mot. for Summ. J. 1.) Plaintiff refers to these blades collectively as "Stryker Flat–Top Sagittal Blades." (*Id.*) The Court will analyze this category collectively as Stryker Offset Blades in order to be consistent with the court's previous order. Appropriate exceptions will be enumerated throughout the order.

ment on summary judgment when a district court interpreted terms shared by two patents because "[b]oth patents share[d] the same written description, and one patent [was] a continuation of the [other] patent"). Defendant asks the court to define a single additional claim term that was not addressed in the court's March 30, 2006, Order.

### 1. *Terms Defined in the Court's Previous Order*

The court construed nearly all of the terms parties assert are relevant to the claims of the patents-in-suit. (March 30, 2006 Order 8–16.) The court's construction is briefly reviewed:

A "tooth" is a cutting surface. (*Id.* 9–10.)

A "tip" refers to "one or more tips at the distal end of a tooth." (*Id.* 10–11.)

"Substantially shaped as right triangles" means "shaped as a triangle in which one of the interior angles is approximately ninety degrees." (*Id.* 11.)

"Hypotenuse" means "the edge of a triangular cutting surface tooth opposite the interior angle of the triangle that is closest to ninety degrees." (*Id.* 12.)

"Each hypotenuse is oriented toward" means "each tooth should have a hypotenuse that is oriented toward the central long axis, or facing that axis." (*Id.*)

"A line" in the context of the patents-in-suit means "a single straight line that is the intersection of two planes." (*Id.* 12–13.)

"Arrayed on a line" means "positioned on a single line." (*Id.* 13–14.)

"Configured to be placed substantially on a tangent" is construed to mean "a blade having a flat-top configuration." (*Id.* 14.)

"Each hypotenuse is oriented at least one of towards and away from the centrally positioned long axis" means "either all of the individual hypotenuses are oriented towards the centrally positioned long axis, or all of the individual hypotenuses are oriented away from the centrally positioned long axis." (*Id.* 14–16.)

### 2. *Construction of Additional Term*

■ Defendant notes that the term "substantially identically shaped" was not addressed in the court's March 30, 2006, Order, and requests the court construe the term. (Def.'s Mot. for Summ. J. of Noninfringement 11.) Defendant argues that this term should mean that the teeth are "approximately identical in characteristics such as size and shape." (*Id.* 12.)

Most of the time, as here, the words or terms which the parties ask the court to construe are the best words or terms that could have been chosen. However, to say that "substantially" means "substantially" undoubtedly would not pass appellant scrutiny. The use of the term "substantially" suggests that the objects in question are "approximately" or "almost" identically shaped. *See Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.,* 340 F.3d 1298, 1311–12 (Fed.Cir.2003) (noting that "words of approximation, such as 'generally' and 'substantially,' are descriptive terms commonly used in patent claims to avoid a strict numerical boundary to the specified parameter" (internal quotations omitted; citations omitted)).

Defendant argues that the ordinary meaning of the word "identical" means "being *exactly* equal and alike." (Def.'s Mot. for Summ. J. of Noninfringement 11–12.) Construing this with the ordinary meaning of shape, defendant argues that the phrase requires uniformity of size and shape. (*Id.* 12.) That construction would substantially (i.e. just about or almost) read the word "substantially" out of the description. Even accepting defendant's definition of shape—having or fashioned to

a particular form—the court cannot accept defendant's construction of this phrase. The definition of shape makes no reference to size. Instead the court will construe "substantially identically shaped" to mean "having a particular form that is approximately exactly alike." A high degree of similarity in shape, but not mathematical exactness, is required. *Liquid Dynamics Corp. v. Vaughan Co., Inc.,* 355 F.3d 1361, 1368 (Fed.Cir.2004) ("The term 'substantial' is a meaningful modifier implying 'approximate,' rather than 'perfect.' ").

### C. Defendant's Motion for Summary Judgment of Noninfringement of the '353, '253, and '101 Patents

■ Under 35 U.S.C. § 271, "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." "A determination of patent infringement consists of two steps: (1) the court must first interpret the claim, and (2) it must then compare the properly construed claims to the allegedly infringing device." *Playtex Prods., Inc. v. Procter & Gamble Co.,* 400 F.3d 901, 905–06 (Fed.Cir. 2005) (citing *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454 (Fed.Cir.1998) (en banc)); *see also Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 374, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) ("Victory in an infringement suit requires a finding that the patent claim 'covers the alleged infringer's product or process,' which in turn necessitates a determination of 'what the words in the claim mean.' "). "To show literal infringement of a patent, a patentee must supply sufficient evidence to prove that the accused product or process meets every element or limitation of a claim." *Rohm & Haas Co. v. Brotech Corp.,* 127 F.3d 1089, 1092 (Fed.Cir.1997) (citations omitted). Plaintiff bears the burden of proving that each accused product "includes every limitation of [an asserted] claim or an equivalent of each limitation." *Dolly, Inc. v. Spalding & Evenflo Cos.,* 16 F.3d 394, 397 (Fed.Cir.1994).

#### 1. Stryker Dual–Cut Blades

##### a. Literal Infringement

■ Claims 1 and 14 of the '253 patent contain the following elements: (1) a proximal end having a hub for attachment to an oscillatory power tool; (2) a distal end having a plurality of substantially identically shaped cutting teeth (Claim 1 requires that they be an even number of teeth; Claim 14 does not); and (3) tips that are "configured to be placed substantially on a tangent which is perpendicular to a radial line extending from the center of the power tool cutting axis that bisects the arc of travel within which the blade travels . . . ." (Gont Noninfringement Decl. Ex. D ('253 patent, 8:36–42).)

The issue with respect to these claims is whether the Dual–Cut blades have "substantially identically shaped" cutting teeth. Defendant argues that literal infringement is precluded because the "exterior" teeth and the "interior" teeth are different in shape and are asymmetrical about the valley. In retrospect, and in light of the arguments presently being made, the court's definition of tooth as "a cutting surface" may be somewhat ambiguous. Regardless of how much of the blade is considered the "tooth," however, it is clear from the engineering specifications and physical inspection of the blade with the aid of a magnifier, that the exterior teeth differ in shape from the interior teeth.

Specifically, the exterior edge of exterior teeth have straight sides. The edges leading into the valley of the fishtail of the interior teeth are curved. This is evident whether the court further defines teeth as encompassing all the area leading from the trough to the tip, as defendant posits, or

some other line cutting across the tips and containing only a fractional amount the area encompassed by defendant's construction. Unless the court would reduce the tooth such to that which is substantially indistinguishable from the tip and essentially has a microscopic area, no reasonable jury would fail to conclude that the two outside teeth have straight exterior edges and the remaining teeth have curved edges leading into the valley of the fishtail. Therefore, the teeth are not substantially identically shaped as a matter of law and the Dual–Cut blades do not literally infringe Claims 1 and 14 of the '253 patent.

### b. Infringement Under the Doctrine of Equivalents

 Some products or processes not strictly covered by the patent claims may still infringe, if they fall under the additional scope of protection allowed by the doctrine of equivalents. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 535 U.S. 722, 733, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002) ("The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes."). Insubstantial differences between an accused product and a patent that preclude literal infringement may not prevent infringement under the doctrine of equivalents (DOE). *Id.* An accused product would infringe under the DOE if that product passed the function-way-result test: if, with respect to each claim limitation, it performed substantially the same function in substantially the same way to achieve substantially the same result as the patented product. *Dawn Equip. Co. v. Ky. Farms Inc.,* 140 F.3d 1009, 1016 (Fed.Cir.1998).

 Plaintiff is estopped from asserting that the fishtail blades are "substantially identically shaped" under the DOE. When a party narrows claim scope by amending the claims or making arguments to the PTO during its efforts to patent the invention, that party is estopped from recapturing the previously surrendered claim scope with the doctrine of equivalents. *Honeywell Intern. Inc. v. Hamilton Sundstrand Corp.,* 370 F.3d 1131, 1139–40 (Fed.Cir.2004). Plaintiff submitted an amendment to the application that issued as the '253 patent in which claim 1 was amended to include the narrowing "substantially identically shaped" limitation to the requirement that "said distal end hav[e] a plurality of cutting teeth." (Gont Noninfringement Decl. Ex. I, 11–12.) Moreover, to read "substantially identically shaped" in such a way that curved-edged and straight-edged would be functional equivalents would effectively read the "substantially identically shaped" limitation out of the patent. *See Asyst Techs., Inc. v. Emtrak, Inc.,* 402 F.3d 1188, 1195 (Fed.Cir.2005) ("To hold that 'unmounted' is equivalent to 'mounted' would effectively read the 'mounted on' limitation out of the patent."). The court will grant defendant's motion for summary judgement with respect to the Dual Cut blades for Claims 1 and 14 of the '253 patent.

### 2. Stryker Offset Blades

 Defendant argues that the Stryker Offset blades do not literally infringe any of the asserted claims of the '353 patent and the '253 patent. Because the offset blades are curved to the sides, defendant argues that the following claim limitations are not met: "substantially identically shaped," "shaped substantially as right triangles," and "each hypotenuse is oriented at least one of towards or away from the centrally positioned long axis." (Def.'s Mot. for Summ. J. on Noninfringement 17–18.) The court previously declined to grant defendant's summary judgment motion with respect to the offset

blades because although the blades may not be directly centered on a line, the blades are "substantially" positioned on a line or tangent. (March 30, 2006 Order 21.)

Defendant's arguments are similar to those the court has already rejected. Defendant argues the teeth cannot be "substantially identically shaped" because the offset teeth are bent to the sides. According to the engineering specifications of Stryker Part No. 4225–85–127, the offset range is between .0005 and .0520 inches. (Dornfeld Noninfringement Decl. Ex. K.) Those specifications fail to indicate any curvature. They may be very slightly curved, but visual inspection of blades with the aid of a magnifier further persuades this court that no reasonable jury could conclude that the Offset blades and plaintiff's blades are not "substantially identically shaped."

As to Claims 2, 4, 6, 8, 10, 12, and 15–18 of the '253 patent and all asserted claims of the '353 patent, defendant also argues that the offset blades do not have teeth that are "shaped substantially as right triangles" such that "each hypotenuse is oriented at least one of towards or away from the centrally positioned long axis." [7] Defendant argues that any triangular shape formed by the tooth cannot be a triangle because a triangle is a three-sided geometric construction in a single plane. Defendant's construction would vitiate the modifier substantially, and thus the court concludes that the teeth are shaped substantially as right triangles.

The court discussed the term "each hypotenuse is oriented at least one of towards and away from the centrally positioned long axis" in great detail in the previous order finding the term to mean "either all of the individual hypotenuses are oriented towards the centrally positioned long axis, or all of the individual hypotenuses are oriented away from the centrally positioned long axis." (March 30, 2006 Order 14–16.) Defendant argues that by bending each tooth, the hypotenuse is no longer oriented toward the centrally positioned axis of the blade. Regardless of the tooth offsetting, the edge of each individual tooth still radiates from the central axis. Upon visual inspection with the aid of magnification, the court concludes that no reasonable jury would fail to find that "each hypotenuse is oriented at least one of towards and away from the centrally positioned long axis." Accordingly, the court will deny defendant's motion for summary judgment of noninfringement of the asserted claims of the '353 and the '253 patents with regard to the Offset blades.[8]

### 3. '101 Patent

Plaintiff argues that defendant has contributorily infringed the '101 patent or induced the infringement by defendant's customers. "Absent direct infringement of the patent claims, there can be neither contributory infringement nor inducement of infringement." *Met–Coil Sys., Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed.Cir.1986). Patentee bears the bur-

---

**7.** These two requirements are specifically enumerated in Claim 1 of the '353 patent, which is the only independent claim of that patent. Claim 1 of the '353 patent also requires that the teeth be "substantially identically shaped." For reasons previously discussed, the court concludes as a matter of law that the teeth are "substantially identically shaped."

**8.** Because the court declines to grant defendant's motion on the grounds that literal infringement is precluded, the court does not need to consider whether the doctrine of equivalents would preclude summary judgment.

den of establishing infringement. *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1325 (Fed.Cir.2004). Thus, plaintiff must prove direct infringement of the method patent by a third party if it is to succeed. *See Joy Techs. Inc. v. Flakt, Inc.*, 6 F.3d 770, 776 (Fed.Cir.1993) (holding that seller of equipment cannot be a contributory infringer where it is established that there will be no direct infringement of method patent by buyers of equipment); *Linear Tech. Corp.*, 379 F.3d at 1326 ("[A] party may still be liable for inducement or contributory infringement of a method claim under 35 U.S.C. §§ 271(b), (c) if it sells infringing devices to customers who use them in a way that directly infringes the method claim.").

Defendant argues that plaintiff has not proffered evidence demonstrating that someone has used the patented method. *See Tech. Licensing Corp. v. Thompson, Inc.*, No. 03–1329, slip op. *24 (E.D.Cal. Nov. 17, 2005) ("To use a baseball analogy, it is like the patentee patented 'the method of hitting a baseball free hand using a bat with a long, skinny handle.'" In that situation, the patentee's evidence that "the defendant's product is a bat with a long, skinny handle suitable for hitting a baseball free hand is not enough to infringe the method patent.") The product in *Tech Licensing Corp.*, however, had other conceivable uses. Here, it is undisputed that the only use for the accused blades is in conjunction with a powered sagittal bone saw for use in cutting bone. (Tadlock Decl. Exs. 21–22.) Further, defendant instructs its customers to use the blade only once for each surgical procedure. (*Id.* Ex. 23.) Plaintiff also submits evidence that defendant has sold the specified blades to hospitals. (*Id.* Ex. 24.)

 Plaintiff may prove direct infringement by a third party through circumstantial evidence. *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1219 (Fed.Cir.2006) ("A patentee may prove direct infringement or inducement of infringement by either direct or circumstantial evidence." (citing *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed.Cir.1986))). Plaintiff offers evidence that when the bone is initially contacted by the Dual–Cut blade such that a multiplicity of different teeth contact the bone substantially simultaneously, a linear kerf is formed. (Dornfeld Decl. Ex. N.) This cutting demonstration also indicates each tooth moves progressively, half of the teeth are away from bone contact for clearing bone ships, and half of the teeth are away from bone contact to in order to cool when not in use. (*Id.*) Plaintiff offers similar evidence for Stryker Offset blades. (*Id.* Ex. M.) This is circumstantial evidence, sufficient to create a disputed issue of material fact, of direct infringement by a third party. Accordingly, the court cannot grant defendant's motion for summary judgment with respect to Claims 1–4 of the '101 patent.

On Claim 10 of the '101 patent, defendant's motion for summary judgment with respect to the Dual–Cut blades will be granted because the court has concluded, above, that the teeth differ in shape. Defendant's motion with respect to the Offset blades will also be denied because the cutting demonstration mentioned above also creates a disputed question of fact.

D. *Defendant's Motion for Summary Judgment of Invalidity of the '353, '253, and '101 Patents*

 Defendant moves for summary judgment of invalidity of patents-in-suit on the basis that the asserted claims are anticipated and/or obvious by prior art, prohibited by the statutory on-sale bar pursuant to 35 U.S.C. § 102(b), and indefinite under 35 U.S.C. § 112. The party seeking to establish the invalidity of a patent "must

overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence." *Nystrom v. Trex Co.,* 374 F.3d 1105, 1117 (Fed.Cir.2004). Standards for anticipation and obviousness are by viewed by a person of ordinary skill in the field of the invention. *Scripps Clinic,* 927 F.2d at 1576; 35 U.S.C. § 103. The parties essentially agree that the standard for adjudging one of ordinary skill is "someone who, in 1991, would have a Bachelor of Science degree in Mechanical Engineering and at least three years of experience involving the design or manufacture of surgical tools." (Def.'s Mot. for Summ. J. of Invalidity 8; Dornfeld Invalidity Decl. ¶ 9.) Plaintiff would replace the term surgical tools with mechanical devices because surgical tools could include devices which are not primarily mechanical. (Dornfeld Invalidity Decl. ¶ 10.)

### 1. *Anticipation*

A patent is anticipated, and therefore invalidated, by prior art if (1) the invention it claims was known or used by others in this country before the patent application was filed; (2) the invention was in public use or on sale in this country more than one year before the application was filed; (3) the invention was described in someone else's patent before the patent applicant invented what is claimed; or (4) the invention was made in this country by another inventor before it was invented by the applicant, and the other inventor did not abandon, suppress, or conceal his invention. *See* 35 U.S.C. § 102(a), (b), (e)(2), (g)(2).

An earlier invention will not "anticipate" a later invention unless there is "no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention." *Scripps Clinic and Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1576 (Fed.Cir.1991). Thus, an-

ticipation requires the presence in a single prior art disclosure of each and every element of a claimed invention. *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.,* 34 F.3d 1048, 1052 (Fed.Cir.1994). Whether an earlier reference anticipates a claim or claims of a patent is a question of fact. *Scripps,* 927 F.2d at 1575; *Operations Int'l Ltd. v. Solutia, Inc.,* 289 F.3d 1367, 1376 (Fed.Cir.2002). "To anticipate a claim, a reference must disclose every element of the challenged claim and enable one skilled in the art to make the anticipating subject matter." *PPG Indus. v. Guardian Indus. Corp.,* 75 F.3d 1558, 1566 (Fed.Cir.1996) (citations omitted).

### a. *The '253 Patent*

The court will discuss defendant's anticipation arguments with respect to the '253 patent first because all of the prior art cited by defendant is asserted against this patent. Claims 1 and 14 of the '253 patent contain the following elements: (1) a proximal end having a hub for attachment to an oscillatory power tool; (2) a distal end having a plurality of substantially identically shaped cutting teeth (Claim 1 requires that they be an even number of teeth; Claim 14 does not); and (3) tips that are "configured to be placed substantially on a tangent which is perpendicular to a radial line extending from the center of the power tool cutting axis that bisects the arc of travel within which the blade travels;" so that said teeth (i) provide better tracking when forming the kerf in the bone (Claim 14 lacks this sub-limitation), (ii) cut progressively and sequentially as the kerf begins to form, and (iii) provide for efficient chip removal. Defendant argues that the following patents anticipate Claims 1 and 14 of the '253 patent: U.S. Patent No. 5,122,142 ("Pascaloff '142"); U.S. Patent No. 5,263,972 ("Evans '972"); U.S. Patent No. Des. 337,160 ("Evans '160"); Stryker Part No. 0277–534–053;

and U.S. Patent No. 4,513,742 ("Arnegger '742") (cited for anticipation of Claim 14 only).

Defendant's expert, Dr. Carl Jacobs, opines that each reference anticipates Claim 14 of the '253 patent and Claim 1 is anticipated by Pascaloff '142, Evans '972, Evans '160, Stryker Part No. 0277–534–053. (Jacobs Invalidity Decl.) These references are drawings of surgical saw blades that show tips of teeth placed somewhat on a line. However, Figure 5 of Pascaloff '142 indicates that the teeth are not substantially arrayed on a tangent.

Plaintiff's expert, Dr. David Dornfeld states that it is improper, as a matter of proper scientific analysis, to "rely solely on drawings in patents and other written materials to determine the actual shape, dimensions, or functionality of an object as the drawings, without more, generally do not provide sufficient information from which to make such determinations." (Dornfeld Invalidity Decl. ¶ 20.) As an example, plaintiff submits a blade designed by Gregory May, which appears to show a flat-top configuration. (Hulse Invalidity Decl. Ex. 27.) However, Mr. May testified that the blade he designed had teeth on an arc. (*Id.* Ex. 42.) Further, Dornfeld argues that one skilled in the art "would have understood that such drawings depict blades with tips placed on an arc, as that was the standard design in the field in the 1991 time frame and earlier." (*Id.*)

On summary judgment, any inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, not the motion's proponent. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348 (1986). In light of testimony from Mr. May and Dr. Dornfeld, a reasonable jury could find that Evans '942, Evans '160, Stryker Part No. 0277–534–053, and Arnegger '742 do not have blades with tips "configured to be placed substantially on a tangent." Whether each reference anticipates a flat-top configuration is a disputed question of material fact.

Similarly, plaintiff's expert asserts after consulting the report and exhibits of defendant's expert as well as the patents-in-suit and the cited references that none of the cited references indicate a blade with teeth that (i) provide better tracking when forming the kerf in the bone, (ii) cut progressively and sequentially as the kerf begins to form, and (iii) provide for efficient chip removal. (Dornfeld Invalidity Decl. ¶¶ 25, 33, 39, 49, 58.) Thus, whether each reference demonstrates by clear and convincing evidence that the referenced blade has such teeth is a disputed question for the trier of fact. A reference must disclose every element of the challenged claim. *PPG Indus.,* 75 F.3d at 1566 (Fed. Cir.1996). Because disputed questions remain concerning certain elements, the court cannot conclude on summary judgment that any of the references anticipates Claims 1 and 14.

Defendant argues that Pascaloff '142 anticipates Claims 2, 4, 6, 8, 10, 12, and 15–18 of the '253 patent. Claims 15–18 are dependant on Claim 14 so summary judgment cannot be granted for the same reason as discussed with respect to Claim 14. Claims 2 and 4 require, *inter alia,* a blade that has tips "configured to be placed substantially on a tangent." Claims 6, 8, 10, and 12 require, *inter alia,* a blade that has tips "configured to be placed substantially on a tangent" and teeth that cut such that said teeth (i) provide better tracking when forming the kerf in the bone, (ii) cut progressively and sequentially as the kerf begins to form, and (iii) provide for efficient chip removal. Pascaloff '142 raises at least the following questions that must be resolved by the trier of fact: (1) whether Pascaloff '142 demonstrates by clear and convincing evidence that its blade has tips "configured to be

placed substantially on a tangent" so that it has a flat-top configuration, and (2) whether its blade has teeth that cut such that said teeth (i) provide better tracking when forming the kerf in the bone, (ii) cut progressively and sequentially as the kerf begins to form, and (iii) provide for efficient chip removal. Therefore, Pascaloff '142 does not anticipate these claims as matter of law.

### b. The '353 Patent

Defendant argues that Pascaloff '142 anticipates Claims 1, 3, 5, 7, 9, and 11 of the '353 patent. Claim 1 requires, *inter alia,* a blade with teeth wherein the "tips are arrayed on a line perpendicular to the centrally positioned long axis." (*Id.*) Pascaloff '142 does not anticipate Claim 1 of the '353 patent as a matter of law because there is a disputed material fact whether its blade has tips "configured to be placed substantially on a tangent" so that it has a flat-top configuration. The only independent claim of the '353 patent that plaintiff alleges defendant's products infringe is Claim 1. All other asserted claims in the patent are dependent upon Claim 1. (March 30, 2006 Order 3–4.) Because Pascaloff '142 does not anticipate Claim 1 as a matter of law; Claims 3, 5, 7, 9, and 11 are not anticipated as a matter of law.

### c. The '101 Patent

Defendant argues that Pascaloff '142, Evans '160, Evans '972, Stryker Part No. 0277–534–053, and Arnegger '742 anticipate Claims 1–4 and 10 of the '101 patent. As discussed, *supra,* Claims 2, 3, and 4 all modify and depend on Claim 1. Claim 1 requires, *inter alia,* teeth such that said teeth (i) provide better tracking when forming the kerf in the bone, (ii) cut progressively and sequentially as the kerf begins to form, and (iii) provide for efficient chip removal. Whether each of the above references indicates a blade that demonstrates such cutting characteristics is a disputed question of fact. Accordingly, summary judgment is not proper for Claims 1–4.

Claim 10 requires, *inter alia,* a blade with teeth (1) wherein the teeth "are configured to be placed substantially on a tangent perpendicular" to the central axis; and (2) said teeth (i) provide better tracking when forming the kerf in the bone, (ii) cut progressively and sequentially as the kerf begins to form, and (iii) provide for efficient chip removal. With regard to Claim 10, the following facts must be determined by the trier of fact: (1) whether the reference demonstrates by clear and convincing evidence that the referenced blade has tips "configured to be placed substantially on a tangent" so that it has a flat-top configuration, and (2) whether the referenced blade has teeth that (i) provide better tracking when forming the kerf in the bone, (ii) cut progressively and sequentially as the kerf begins to form, and (iii) provide for efficient chip removal. Accordingly, summary judgment is not proper for Claim 10.

Because the court finds that there are disputed issues of fact as to whether any cited reference anticipates all the elements of any asserted claim, it cannot conclude as a matter of law that a reasonable jury would find that any of the above references anticipates any asserted claim by clear and convincing evidence.

### 2. On–Sale Bar

■ A person is not entitled to patent an invention if it was "on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. § 102(b). The on-sale bar applies when there is a commercial offer for sale, which includes two elements: (1) a commercial offer and (2) the offer was for the patented invention. *Sparton Corp. v. United States,* 399 F.3d

1321, 1323 (Fed.Cir.2005) ("While the Supreme Court has not explained what is necessary for a 'commercial offer for sale,' we have held that two elements are necessary. Namely, a court must find that (1) there was a 'commercial offer'; and (2) that offer was for the patented invention." (citing *Scaltech, Inc. v. Retec/Tetra, L.L.C.,* 269 F.3d 1321, 1328 (Fed.Cir.2001))).

 Plaintiff raises a material disputed fact as to whether there was a commercial offer of Stryker Part No. 0277–534–053 prior to the critical date of May 31, 1990. Specifically, defendant's drawings for this part indicate a date of June, 1990 (Hulse Invalidity Decl. Ex. 25). As discussed, *supra,* Part II.D.1, whether Stryker Part No. 0277–534–053 has a flat-top configuration and the cutting characteristics detailed in the claims is a disputed fact question. Defendant fails to meet its burden on summary judgment to invoke the on-sale bar.

### 3. Obviousness

 A patent is invalid due to obviousness "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art …." 35 U.S.C. § 103. The determination of obviousness is a question of law based on underlying factual considerations, including (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art; and (4) any "secondary considerations," such as whether the inventor was responding to long felt but unsolved needs, the failures of others, and the commercial success of the invention. *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

 The court must also take care not to enter the "tempting but forbidden zone of hindsight" in analyzing whether an invention would have been obvious. *In re Dembiczak,* 175 F.3d 994, 998 (Fed.Cir. 1999) Unlike anticipation, where a given reference must contain all elements of an asserted patent claim, elements from different prior art references may be combined; however, there must be some teaching, suggestion, or reason in those references to select the particular elements and combine them as was combined by the inventor of the challenged patent. *Cf. Vulcan Eng'g Co., Inc. v. Fata Aluminium, Inc.,* 278 F.3d 1366, 1372 (Fed.Cir. 2002).

#### a. The '253 Patent

 Defendant argues that Claim 14 of the '253 patent is obvious alone or with any combination of Pascaloff '142, Evans '160, Evans '972, Stryker Part No. 0277–534–053, and Arnegger '742. As discussed, *supra,* none of these five cited references above alone would render Claim 14 of the '253 patent obvious. It remains a disputed question of material fact whether any of the five references have a blade constructed in a flat-top configuration. Defendant does not meet its burden of showing a combination of the above references that would indicate the next obvious step in the inventive process would have been constructing a blade with a flat-top configuration. Because the defendant has failed to show why a flat-top configuration is obvious based on the cited references, this essential question of fact has not been conclusively established. The court cannot conclude that Claim 14 is obvious as a matter of law. Further, defendant does not meet its burden of showing a combination of the above references that would indicate the next obvious step in the inventive process would have been to create a blade with a cutting action such that the "teeth cut both progressively and sequentially" to "provide faster aggressive cutting

and efficient chip removal" and "better tracking."

■ Moreover, secondary considerations "can often serve as insurance against the insidious attraction of the siren hindsight when confronted with a difficult task of evaluating the prior art." *W.L. Gore & Assocs., Inc., v. Garlock, Inc.,* 721 F.2d 1540, 1553 (Fed.Cir.1983), *cert. denied,* 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984). Secondary considerations include whether the inventor was responding to long felt but unsolved needs, the failures of others, and the commercial success of the invention. *Graham,* 383 U.S. at 17, 86 S.Ct. 684. Plaintiff presents evidence that there was a long felt need for a different type of cutting blade given that blades prior to 1991 often kicked out of the cutting grove. (Fisher Decl. ¶ 4.) Plaintiff also presents evidence that, given the state of the art at the time of invention, it was not expected that a flat-top configuration would perform more effectively at cutting bone than the predominate curved-top configuration. (*Id.* ¶¶ 4-6.) Additionally, plaintiff presents evidence that the inventions claimed in the patents-in-suit were commercially successful. (*Id.* ¶ 6; Pollock Decl. ¶ 6.) Secondary considerations are not themselves dispositive. *See Newell Cos. v. Kenney Mfg. Co.,* 864 F.2d 757, 768 (Fed.Cir.1988). However, this evidence further calls into question defendant's assertion that there is not a disputed material fact that a combination of references encompasses all elements of Claim 14 or that a missing element was the next obvious step in the inventive process so that the court may conclude that Claim 14 was obvious.

Defendant argues that Claim 1 is obvious given any or a combination of Pascaloff '142, Evans '160, Evans '972, and Stryker Part No. 0277-534-053; Claims 2 and 17 are obvious given any or a combination of Evans '160, Evans '972, Stryker Part No.

0277-534-053, and Arnegger '742; and Claims 4, 6, 8, 10, 12, 15, 16, and 18 are obvious given any or a combination of Evans '160, Evans '972, Stryker Part No. 0277-534-053, and Arnegger '742. As discussed, *supra,* no cited reference alone would render these claims obvious. As discussed with respect to Claim 14 of the '253 patent, defendant does not meet its burden of showing a combination of the above references that would indicate the next obvious step in the inventive process would have been constructing blades with a flat-top configuration. Thus, there is no combination of the above references that would render these claims obvious on summary judgment. Moreover, secondary considerations bolster the court's decision to deny defendant's motion for summary judgment of invalidity with respect to these claims.

b. *The '353 Patent*

Defendant argues that Claims 1, 3, 5, 7, 9, and 11 of the '353 patent are obvious given Pascaloff '142 or a combination of Pascaloff '142, Evans '160, Evans '972, Stryker Part No. 0277-534-053, and Arnegger '742. As discussed, *supra,* Pascaloff '142 does not render the '353 patent claims obvious on summary judgment. As also discussed, *supra,* defendant does not meet its burden of showing a combination of the above references that would indicate the next obvious step in the inventive process would have been constructing blades with a flat-top configuration. Thus, there is no combination of the above references that would render Claims 1, 3, 5, 7, 9, and 11 obvious on summary judgment. Moreover, secondary considerations bolster the court's decision to deny defendant's motion for summary judgment of invalidity with respect to these claims.

c. *The '101 Patent*

■ Defendant argues that Claims 1-4 and 10 are obvious given any or a combina-

tion of Pascaloff '142, Evans '160, Evans '972, Stryker Part No. 0277–534–053, and Arnegger '742. As discussed, *supra,* none of the five cited references above alone would render Claims 1–4 and 10 of the '101 patent obvious. Because defendant does not meet its burden of showing a combination of the above references that would indicate the next obvious step in the inventive process would have been constructing blades with a flat-top configuration, there is no combination of the above references that would render Claims 1–4 and 10 obvious on summary judgment. Further, defendant does not meet its burden of showing a combination of the above references that would indicate the next obvious step in the inventive process would have been to create a blade with a cutting action such that the "teeth cut both progressively and sequentially" to "provide faster aggressive cutting and efficient chip removal" and "better tracking." Moreover, secondary considerations bolster the court's decision to deny defendant's motion for summary judgment of invalidity with respect to these claims.

Because this court finds that there are disputed facts as to whether any combination of the cited references renders any asserted claim obvious, the court cannot conclude as a matter of law that any asserted claim is obvious.

### 4. *Indefiniteness*

 The claims of a patent must be definite enough so as to "particularly point[ ] out and distinctly claim[ ] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112. The claims must "inform the public during the life of the patent of the limits of the monopoly asserted, so that it may be known which features may be safely used or manufactured without a license and which may not." *United Carbon Co. v. Binney & Smith Co.,* 317 U.S. 228, 232, 63 S.Ct. 165, 87 L.Ed. 232 (1942). A claim fails to meet

this requirement if one of ordinary skill in the art would not understand the bounds of the claim when read in light of the specification. *Union Pac. Resources Co. v. Chesapeake Energy Corp.,* 236 F.3d 684 (Fed.Cir.2001); *Morton Int'l, Inc. v. Cardinal Chem. Co.,* 5 F.3d 1464, 1470 (Fed. Cir.1993).

 "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.,* 275 F.3d 1347, 1353 (Fed.Cir. 2001) (citing *Personalized Media Commc'ns, L.L.C. v. Int'l Trade Comm'n,* 161 F.3d 696, 705,(Fed.Cir.1998)). Because an issued patent is presumed valid, the burden is on the defendant to prove indefiniteness by clear and convincing evidence. *Morton Int'l,* 5 F.3d at 1470. In evaluating the sufficiency of the evidence on a motion for summary judgment, the court must take this burden into consideration. *See Eli Lilly & Co. v. Barr Labs., Inc.,* 251 F.3d 955, 962 (Fed.Cir.2001).

#### a. *The '253 Patent*

 Defendant argues that the following claim terms in the '253 patent are indefinite: "substantially identically shaped teeth," "better tracking," "progressively and sequentially," "faster aggressive cutting," and "efficient chip removal." The court defined "substantially identically shaped," *supra,* Part II.B.2. Defendant takes the term "better tracking" out of context. The full context is that "said teeth contact the bone to be cut thereby to provide better tracking of said surgical saw blade when forming a kerf in the bone." (Gont Noninfringement Decl. Ex. E ("253 patent 6:64–66).) Plaintiff's expert asserts that one of skill in the art would know how a typical blade tracked in 1991 so that, in its proper context, said person

would understand this to be an improvement over the state of the art existing at that time. (Dornfeld Invalidity Decl. ¶ 78.) Similarly, "faster aggressive cutting," and "efficient chip removal" are understandable to persons skilled in the art. (Dornfeld Invalidity Decl. ¶ 79.) Moreover, the '101 patent elaborates on the method whereby the teeth cut progressively and sequentially. (Gont Noninfringement Decl. Ex. E ('101 patent, 5:66–6:17) (describing a method referred to as "progressive staircasing").) Defendant fails to carry its burden. *See Eli Lilly & Co.*, 251 F.3d at 962. The terms are not indefinite.

b. *The '353 Patent*

Defendant argues that the term "substantially identically shaped" utilized in the '353 patent is indefinite. The court defined "substantially identically shaped," *supra*, Part II.B.2. The term is not indefinite.

c. *The '101 Patent*

■ Defendant asserts that several of the terms in the '101 patent are invalid. Aside from the terms which the court has established are not invalid with respect to the '253 patent, those contained within Claims 1–4 and 10 of the '101 patent are the following: "substantially simultaneously," "somewhat linear," "kerf is substantially V-shaped," "alternately and sequentially contacting the kerf."[9] Terms of approximation are not indefinite. The terms read within their context would provide someone skilled in the art the scope of the claimed invention. (Dornfeld Invalidity Decl. ¶¶ 80–82.) Defendant fails to carry its burden. *See Eli Lilly &*

*Co.*, 251 F.3d at 962. The terms are not indefinite.

Because the defendant has not shown by clear and convincing evidence that the challenged terms are indefinite, the court will deny defendant's motion for summary judgment of invalidity of the patents-in-suit on the grounds of indefiniteness. Accordingly, the court will deny defendant's motion for summary judgment of invalidity with respect to the '353 patent, the '253 patent, and Claims 1–4 and 10 of the '101 patent.

E. *Plaintiff's Motion for Partial Summary Judgment of Infringement of the '353 and '253 Patents*

■ To show that a product literally infringes a claim, the plaintiff must demonstrate that each element of the properly constructed claim is found in the accused product. *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed.Cir.2005); *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed.Cir.1995) ("To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly.") Plaintiff moves for partial summary judgement of infringement of Claim 1 of the '353 patent and Claim 2 of '253 patent only with regard to the Stryker Offset blades.[10]

Defendant argues that these blades do not infringe both Claim 1 of the '353 patent and Claim 2 of the '253 because these blades lack the following claim limitations: (1) "substantially identically shaped teeth" that are shaped "substantially as right triangles," (2) "each hypotenuse is oriented

---

9. The terms which defendant argues are indefinite with respect to Claim 10 of the '101 patent are the five claims that the court has already determined are not indefinite, *supra*, Part II.D.4.a, the '253 patent indefiniteness analysis.

10. Stryker Offset Blades includes Stryker Part Nos. 4225–070–090, 4225–85–127, 2108–182–001, and 4113–119–090S1. Stryker Parts No. 2108–102S12 and 2108–151S4 do not have offset teeth.

toward the centrally positioned long axis,"[11] and (3) "the tips are arrayed on a line perpendicular to the centrally positioned long axis."[12] The court concluded, *supra*, that the Offset blades do include the first two claim limitations.

The court has previously found in its March 30, 2006, Order held that the tips of the teeth of the offset blade are " 'substantially' positioned on a line, or tangent." (March 30, 2006, Order 21.) Further, "the offset teeth, although not centered on such a line, may still be positioned on that line." (*Id.*) For Claim 2 of the '253 patent, the relevant claim limitation is "the tips are configured to be placed substantially on a tangent which is perpendicular to a radial line extending from the center line of the power tool cutting axis that bisects the arc of travel within which the blade travels." The court concludes that no reasonable jury would fail to find this claim limitation in the Stryker Offset blades. Accordingly, the court will grant summary judgment for plaintiff on Claim 2 of the '253 patent.

 Claim 1 of the '353 patent requires that "the tips are arrayed on a line perpendicular to the centrally positioned long axis." The court has construed "arrayed on a line" to mean "positioned on a single line," and a "tip" to mean "one or more tips at the distal end of a tooth." Given these definitions, the court previously held that "the offset teeth, although not centered on such a line, may still be positioned on that line." (March 30, 2006, Order 21.) Defendant argues that the tips are not arrayed on a line because there is not a line that connects each center point of each tip. Standing the blade on end

and sighting along the teeth at the top, defendant and its experts observe that a single imaginary line cannot be drawn along the horizontal centers of the tips of each of the teeth.

In the days when all boys in the seventh grade were required to take a class in wood shop, we all learned on day one the difference between a cross-cut saw, which is used to cut across the grain, and a rip saw, which is used to cut with the grain. Cross-cut saws have the teeth angled alternatively in opposite directions and rip saws do not. Because most sawing is done across the grain, we learned that most saws sold and used are cross-cut saws. The Stryker Offset blade looks like a cross-cut saw. There is nothing particularly unique about it in that sense. In fact, the Synvasive blade which was provided to the court also appears to be a cross-cut saw. Using defendant's interpretation, no cross-cut saw, however straight, could ever be said to have the tips of its teeth positioned along a single line. That interpretation, however, would not be consistent with the court's construction of the terms.

The court has defined a "tip" as "one or more tips at the distal end of a tooth." The court's definition of a tip is broader than the center of each tip. The court has carefully examined the actual blades at issue. If a straight edge is placed along the tips of the teeth of the offset blade it will come in contact with the tip of each and every tooth. Defendant's experts cannot and do not dispute that fact. Thus, consistent with the court's construction of the terms, no reasonable jury would fail to

**11.** For Claim 2 of the '253 patent, the exact specification is "each hypotenuse is oriented at least one of towards or away from the centrally positioned long axis." Defendant's argument does not depend on the variation between the terms and defendant simply refers to its argument regarding the '353 patent, which in turn refers to defendant's own mo-

tion for summary judgment of noninfringement. (Def.'s Opp'n to Pl.'s Mot. for Summ. J. 8–9, 11–12.)

**12.** Defendant does not make this argument for Stryker Parts No. 2108–102S12 and 2108–151S4.

find that the tips are arrayed on a line that is perpendicular to the central axis. The court will accordingly grant summary judgment for plaintiff on Claim 1 of the '353 patent.

█ As for Stryker Parts No. 2108–102S12 and 2108–151S4, defendant argues that the court cannot conclude that every element of the claim limitations is met because plaintiff has not produced an actual physical specimen of these no-longer manufactured blades, and these blades do not have teeth that were "substantially identically shaped" and "shaped as right triangles." Plaintiff proffers engineering specifications. (Dornfeld Infringement Decl. Ex. B.) Based on the engineering schematic, the court concludes that a jury finding that the blades were not substantially identically shaped and shaped substantially as right triangles would be unreasonable. Accordingly, the court will grant plaintiff's motion for summary judgment with respect to Stryker Parts No. 2108–102S12 and 2108–151S4.

### III. *Conclusion*

IT IS THEREFORE ORDERED that:

(1) defendant's motion for summary judgment of noninfringement of Claims 1 and 14 of the '253 patent and Claim 10 of the '101 patent with respect to the Dual–Cut blades be, and the same hereby is, GRANTED;

(2) defendant's motion for summary judgment of noninfringement of Claims 5, 7, 8, 11, 13, 15, and 17 of the '101 patent be, and the same hereby is, GRANTED;

(3) defendant's motion for summary judgment of noninfringement of Claims 1, 2, 3, 4 of the '101 patent with respect to both Dual–Cut and Offset Blades, and Claim 10 of the '101 patent with respect to the Offset blades, be, and the same hereby is, DENIED;

(4) defendant's motion for summary judgment of noninfringement of the all asserted claims of the '353 patent and '253 patent with respect to the Offset blades be, and the same hereby is, DENIED;

(5) defendant's motion for summary judgment of invalidity of the '353 patent, the '253 patent, and Claims 1–4 and 10 the '101 patent, be, and the same hereby is, DENIED;

(6) plaintiff's motion for partial summary judgment of Claim 1 of the '353 patent and Claim 2 of the '253 patent with respect to the Offset blades and Stryker Parts No. 2108–102S12 and 2108–151S4 be, and the same hereby is, GRANTED.